UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES SULLIVAN,

                Petitioner,                  **REPORT AND RECOMMENDATION**
                                          **No. 05-CV-6060(DGL)(VEB)**

      -vs-

GLENN S. GOORD,  Commissioner of
N.Y.S. Department of Corrections,

                Respondent.
_____

## I.     Introduction

Charles Sullivan ("Sullivan" or "petitioner"), proceeding *pro se*, has filed a petition

seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with regard to his conviction

following a guilty plea on June 13, 2001 in Erie County Court to third degree criminal possession

of a weapon. The Hon. David G. Larimer, United States District Judge, has referred this matter to

the undersigned pursuant to 28 U.S.C. § 636(b) for the issuance of a Report and

Recommendation regarding the disposition of Sullivan's petition.  For the reasons set forth

below, the Court recommends that the petition be denied and that no certificate of appealability

issue with regard to any of Sullivan's claims.

## II.     Factual Background and Procedural History

The following factual summary is taken from the transcripts of the pre-trial suppression

hearing held on January 16 and February 23, 2001. At about 2:35 a.m. in the Town of Amherst,

Officer Thomas Grillo ("Grillo") observed Sullivan driving a rented Dodge Neon without his

headlights on. Grillo, alone on patrol, followed Sullivan's car and activated his overhead lights.

At that point, Sullivan pulled over. Grillo observed two individuals in the car as he approached on the driver's side. As Sullivan leaned over to the glove-compartment to get his license, registration, and insurance card to show Grillo, the breast-pocket on his shirt opened slightly and Grillo observed a plastic baggie that appeared to contain marijuana. Grillo asked Sullivan what was in his pocket, and Sullivan replied, "Marijuana." Sullivan handed the baggie to Grillo upon Grillo's request. Grillo examined the bag and determined that the contents appeared to be marijuana.

Grillo then asked Sullivan to exit his vehicle. Before placing Sullivan into his patrol vehicle, Grillo did a safety pat-down and felt a bulge in Sullivan's pants' pocket. Grillo inquired as to what the bulge was, and Sullivan replied that it was a gun. Grillo then handcuffed Sullivan and read him the *Miranda* warnings. Sullivan did not ask to speak to an attorney or decline to speak to the police. After waiving his *Miranda* rights, Sullivan indicated that he did not have a pistol permit to legally possess the gun.

By Indictment No. 00-0695-001, Sullivan was charged with two counts of third degree criminal possession of a weapon (N.Y. Penal Law § 265.02(4)) as well as with a violation of Vehicle and Traffic Law § 375-2(a)(1) for driving with no headlights. Sullivan pled guilty in Erie County Court (Amico, J.) to one count of third degree criminal possession of a weapon in satisfaction of the charges pending against him and received a sentence promise of three (3) years. On June 13, 2001, Sullivan was sentenced accordingly to a determinate term of incarceration of three (3) years.

On direct appeal, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the judgment of conviction against him, and leave to

appeal to the New York Court of Appeals was denied. *People v. Sullivan*, 6 A.D.3d 1175 (App. Div. 4th Dept.), *lv. denied*, 3 N.Y.3d 648 (N.Y. 2004).

This federal habeas petition followed in which Sullivan alleged various instances of ineffective assistance of appellate counsel; that his appellate rights waiver was invalid; that insufficient evidence was adduced in the grand jury proceeding; and that his Fourth Amendment rights were violated during the stop of his vehicle. *See* Petition ("Pet.") (Dkt. #1). Respondent answered the petition, conceding that all of Sullivan's claims were exhausted. *See* Resp't Mem. at 1 (Dkt. #); 28 U.S.C. § 2254(b)(1). The Appellate division dismissed certain of petitioner's claims on the basis that appellate review was foreclosed by his waiver of appellate rights, or by his guilty plea, or by both, and respondent has interposed the affirmative defense of procedural default on those claims. Respondent asserts that they are procedurally barred from federal habeas review because the Appellate Division relied on adequate and independent state grounds to dismiss them. Respondent also argues that federal habeas review of all of Sullivan's claims is foreclosed by his voluntary guilty plea, and that the Fourth Amendment claim is not cognizable on federal habeas review. Finally, respondent argues that, in any event, all of Sullivan's claims are without merit and must be dismissed on that basis as well.

As discussed more fully below, the Court agrees with respondent that federal review of Sullivan's claims alleging violations of his Fourth Amendment rights and defects in the grand jury proceeding has been forfeited as a result of his guilty plea, which he has never alleged was involuntary. In addition, the Court finds that all but one of Sullivan's claims alleging ineffective assistance of trial counsel are precluded by his guilty plea. Even considering the merits of his allegations of attorney error, none of them, taken singly or together, amount to ineffective

assistance of counsel. Finally, the Court agrees with respondent that Sullivan has not

demonstrated that his appellate rights waiver was invalid as a matter of either state or federal law.

Therefore, for the reasons that follow, the Court recommends that all of Sullivan's claims be

dismissed.

### III.    Merits of the Petition

**Ground One:**          **Petitioner did not receive the effective assistance of trial counsel**.

To prevail on an ineffective assistance of counsel claim, petitioner must satisfy the

two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  "First, the defendant

must show that counsel's performance was deficient. This requires showing that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment." *Id.* at 687. In order to establish that counsel's performance was

constitutionally deficient, the petitioner must demonstrate that his representation he received "fell

below an objective standard of reasonableness." *Id.* at 687-88. Second, the petitioner must show

that counsel's deficient performance prejudiced his defense. *Id.* at 692. To demonstrate prejudice,

petitioner must prove that, "but for" counsel's errors, there was a reasonable probability that the

outcome of the proceeding would have been different. *Id.* at 694. Failure to satisfy either

requirement of *Strickland* is fatal to a petitioner's claim of ineffective assistance. *See id.* at 696

("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both

components of the inquiry if the defendant makes an insufficient showing on one." ).

The *Strickland* standard applies to claims of ineffective assistance raised by defendants

convicted pursuant to a guilty plea. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *accord, e.g.,*

*United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2003).  In the context of a guilty plea, the

-4-

prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. To demonstrate "prejudice," the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Sullivan indicates that was represented by attorney David Cotter ("Cotter") "through most of the preliminary staged [sic] of the proceedings, *i.e.*, arraignment, motions practice, and the suppression hearing." Pet'r Supp. App. Br. at 5. After becoming dissatisfied with Cotter, Sullivan was granted substitute assigned counsel, attorney John Nuchereno ("Nuchereno"), who represented Sullivan "through Plea and Sentencing." *Id.*

It is well-settled that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights.  Tollett v. Henderson, 411 U.S. 258, 267 (1973)These include the privilege against compulsory self-incrimination, the right to confront one's accusers, the right to a jury trial, the right to a speedy trial, and the right to require the prosecutor to prove the crime beyond a reasonable doubt. *Id.*; *accord, e.g.*, *Miller v. Angliker*, 848 F.2d 1312, 1319 (2d Cir.), *cert. denied*, 488 U.S. 890 (1988). As the United States Supreme Court has explained,

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*[*v. Richardson*, 397 U.S. 759, 771 (1970)].

*Tollett v. Henderson*, 411 U.S. at 267; *accord United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.

1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'") (quoting *Tollett*, 411 U.S. at 267) (alteration in original)); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) (*per curiam*) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."); *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea.").

In *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997), the Second Circuit Court of Appeals considered a defendant's claim that he received ineffective counsel both because "he was coerced by his attorney into pleading guilty," and because the same attorney "failed to call witnesses at a pretrial suppression hearing." *Torres*, 129 F.3d at 715. After rejecting Torres' first claim on the basis that defendant's plea was completely voluntary and knowing, the Second Circuit held that the second claim regarding counsel's performance at the suppression hearing was barred under *Tollett v. Henderson* because the substance of the claim did not relate to the voluntariness of Torres' guilty plea. *Id.* (citing *United States v. Coffin*, 76 F.3d at 497; *Tollett v. Henderson*, 411 U.S. at 267).  *Accord, e.g.*, *Smith v. Burge*, No. 03 Civ.8648 RWS., 2005 WL 78583, at *7-8 (S.D.N.Y. Jan. 12, 2005) ("First, Smith has waived any pre-plea ineffective assistance claim [based on the holding in *Tollett v. Henderson*]; consequently, to the extent his argument concerns the purported failure of trial counsel to raise [a legal] defense prior to his

plea, his claim is not cognizable."); *Schwartz v. Connell*, No. 05 Civ. 10305(RPP), 2006 WL

3549660, *5 (S.D.N.Y. Dec. 6, 2006) ("Petitioner argues that [trial counsel's] not moving to

dismiss the charges did affect his plea because had he known of this 'prosecution-ending'

motion, he would not have pled guilty. A motion to dismiss for a duplicitous indictment is

similar to a speedy trial motion in that both can result in a dismissal of charges against the

defendant. Both errors, however, are rendered irrelevant in the face of defendant's plea of guilty

since this admission is, in most cases, convincing factual evidence of actual guilt."); *Vasquez v.

Parrott*, 397 F. Supp.2d 452 (S.D.N.Y. 2005) ("The petitioner's unconditional guilty plea waives

the separate claim that he was denied effective assistance of counsel because of his counsel's

failure to support the second speedy trial motion, because that motion did not relate to the

character of his guilty plea."); *Pryor v. McCoy*, No. 96 Civ. 1810, 1997 WL 436809, at *1

(N.D.N.Y.  July 25, 1997) (Pooler, J.) ("An unconditional guilty plea . . . waives ineffective

assistance of counsel claims except as they relate to the voluntary nature of a plea.").  In the

present case, as in *Torres*, Sullivan's claims of ineffectiveness ascribed to attorney Cotter are

barred under *Tollett v. Henderson* because the substance of those claims do not relate to the

voluntariness of Sullivan's plea or the advice he received with regard to pleading guilty. *See

United States v. Torres*, 129 F.3d at 715. Accordingly, the Court recommends that they be

dismissed on that basis.

Sullivan's last claim of attorney ineffectiveness relates to his second assigned counsel,

attorney Nuchereno, whom he faults for "stat[ing] to appellant that he believed the conviction

was inevitable, and instruct[ing] appellant that he should plead guilty." Pet'r Supp. App. Br. at

12. According to Sullivan, "[w]ith the location of traffic stop, legality [sic] of search,

discrepancies in suppression hearing [sic] and indictment jurisdictionally defective[,]" Counsel [sic] insistence that appellant was doomed if he went to trial was clear [sic] a sign of counsel [sic] inadequate representation[.]" Pet'r Supp. App. Br. at 13. In addition, Sullivan claims that attorney Nuchereno failed to tell him that in order to be found guilty of criminal possession of a weapon in the third degree, the loaded weapon and the ammunition must be operable. *Id.* Sullivan asserts the prosecution could not prove that the loaded weapon and the ammunition were operable. *Id.* at 14-15, 17-18.

Although the foregoing errors supposedly committed by Nuchereno relate to Sullivan's decision to plead guilty and therefore are not foreclosed by *Tollett v. Henderson*, they do not amount to ineffective assistance by attorney Nuchereno. First, Sullivan has failed to establish that the stop of his vehicle was illegal or that anything improper occurred at the suppression hearing. For instance, Sullivan contends that Officer Grillo was outside of his jurisdiction when he detained Sullivan's vehicle and therefore did not have the authority for the stop, but this is not borne out by the record. Sullivan states that "[w]ith the police report stating "3500 Main Street" as place of occurrence, this is a discrepancy from Officer Grillo testimony at Grand Jury . . . and Suppression Hearing." *Id.* However, Sullivan has failed to establish that the stop of his vehicle occurred outside the police officer's geographical jurisdiction, let alone that there was a discrepancy in the officer's testimony. At the suppression hearing Officer Grillo did state that he saw petitioner, driving without headlights on, near 3500 Main Street, the Tops Plaza in the Town of Amherst, so there was no discrepancy between his testimony and the police report. With regard to the issue of whether the weapon was operable, the ballistics expert testified that there was one spent cartridge in the gun that had been fired and four cartridges that had not, at least

one of which was live. *See* Letter from John Nuchereno, Esq. to Attorney Grievance Committee, Resp't Ex. B; Pet'r Supp. App. Br. at 15. Sullivan contends that because three of the cartridges were "defective" and only one was "live", that "establish [sic] doubt in the claim of loaded firearm." However, Sullivan has pointed to no precedent standing for the proposition that all of the ammunition in the firearm had to be "live" in order for it to be considered operable under New York Penal Law § 265.02(4). Furthermore, the gun found on Sullivan had recently been fired. *See* Letter from John Nuchereno, Esq. to Attorney Grievance Committee, Resp't Ex. B.

As the Second Circuit has noted, "an evaluation of ineffective assistance of counsel usually begins with an examination of the strength of the Government's case." *United States v. Helgesen*, 669 F.2d 69, 71 (2d Cir. 1982). Based upon this Court's review of the record below, Sullivan has failed to establish convincing proof of any actual weaknesses in his case which his second attorney disregarded or failed to exploit; to the contrary, it appears that the prosecution had a fairly substantial amount of credible proof against him, including his voluntarily-made oral and written inculpatory statements. Counsel's advice to Sullivan to plead guilty, given the charges against him, the strength of the prosecution's case, and the offer extended to him, "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. at 771.

As to the second prong of the *Strickland* test, there can be no showing of prejudice when a defendant simply speculates that another attorney would have obtained an acquittal. *See United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991) ("While [defendant] may not be pleased with the strategy employed by his trial attorney, that alone is insufficient to establish his attorney's ineffectiveness. Second, assuming that his attorney's performance was objectively

unreasonable, [defendant] has not demonstrated the necessary prejudice to warrant reversal of his

conviction. Rather, [defendant] merely presupposes that a more competent attorney would have

obtained an acquittal. No support is provided for this conclusion. In fact, given the plethora of

evidence against him, there is little reason to believe that alternative counsel would have fared

any better."). *Hill v. Lockhart* plainly holds that in order to find prejudice from counsel's

performance in the context of a guilty plea  petitioner is required to show that there is a

"reasonable probability" that but for counsel's deficient advice, he would have proceeded to trial

instead of pleading guilty. *See* 474 U.S. at 58. Sullivan has not alleged, much less established,

that there was a "reasonable probability" that his alternative course of action to pleading guilty

would have been going to trial. That failure of proof alone is fatal to Sullivan's claim of

ineffective assistance. *Accord*, *e.g.*, *Heyward v. Costello*, 1994 WL 263426, at *4 (S.D.N.Y. June

13, 1994); *see also Albanese v. United States*, 415 F. Supp.2d 244, 251 (S.D.N.Y. 2005); *United

States v. Guidice*, No. 02 Cr. 729, 2004 WL 1152539, at *6 (S.D.N .Y. May 21, 2004) (rejecting

petitioner's ineffective assistance of counsel claim where petitioner neither submitted an affidavit

representing that he would have chosen to proceed to trial had his counsel informed him of

possible errors in the plea agreement, nor had he identified any weaknesses in the Government's

case that could have influenced his plea decision).

Moreover, Sullivan obtained, with attorney Nuchereno's assistance, a favorable plea deal

involving a sentence commitment of three years on one count of criminal possession of a

weapon, a violent felony offense. He faced a determinate sentence of seven years had he

proceeded to trial and been convicted on the charges in the indictment. *See Feliz v. United States*,

2002 WL 1964347, *7 (S.D.N.Y.) ("[B]y pleading guilty Feliz received significant benefits,

including a three-point reduction for acceptance of responsibility and no enhancement for

obstruction. No prejudice exists when a plea agreement lessens the severity of the sentence the

defendant would face if convicted at trial.") (citing *Moran v. United States*, No. 96 Civ. 3657,

1998 WL 54616, at *5 (S.D.N.Y. Feb.10, 1998)); *Scott v. Superintendent, Mid-Orange Corr.

Fac.*, 2006 WL 3095760, *9 (E.D.N.Y. Oct. 31, 2006)).  Furthermore, Sullivan had pending a

much more serious matter involving a charge of attempted murder which could have affected the

judge's sentencing on the weapons possession case.

Finally, the Court notes that Sullivan explicitly stated in his allocution that he fully

understood the consequences of his plea and that he had chosen to plead guilty after a thorough

consultation with his attorney. A district court on habeas review may rely on a petitioner's sworn

statements and hold him to them. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ("[T]he

representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as

any findings made by the judge accepting the plea, constitute a formidable barrier in any

subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption

of verity. The subsequent presentation of conclusory allegations unsupported by specifics is

subject to summary dismissal, as are contentions that in the face of the record are wholly

incredible.") (citations omitted). Sullivan's claim of ineffective assistance of counsel appears to

be based on nothing more than his after-the-fact dissatisfaction with the prosecution's plea offer

and the resultant term of incarceration, which does not constitute a valid basis on which to find

that his counsel was ineffective. *Accord Albanese*, 415 F. Supp. 2d at 254 (citing *United States v.

Garguilo*, 324 F.2d 795, 797 (2d Cir. 1963) ("A convicted defendant is a dissatisfied client, and

the very fact of his conviction will seem to him proof positive of his counsel's incompetence.")).

Accordingly, the Court recommends that Sullivan's claim that attorney Nuchereno provided ineffective assistance of counsel be dismissed as without merit.

In sum, the Court recommends that each aspect of Sullivan's claim of ineffective assistance of trial counsel be dismissed, for all of the reasons detailed above.

**Ground Two:**        **The evidence presented to the grand jury was insufficient to support the indictment.**

Sullivan contends that the prosecution failed to present sufficient evidence in the grand jury with regard to the offense of criminal possession of a weapon in the third degree, and therefore the indictment was jurisdictionally defective on its face. Pet'r Mem. at 14. A person is guilty of violating Penal Law § 265.02(4) when he possesses any "loaded firearm." N.Y. Penal Law § 265.02(4). Sullivan argues that the statute requires the "gun be operable" and that the "ammunition has to be proven to be operable[.]" *Id.* at 15 (citations omitted).

Because Sullivan pleaded guilty, his claim concerning the insufficiency of the indictment is not cognizable as a constitutional claim on federal habeas review.  Absent a court-approved reservation of issues for appeal, a defendant who pleads guilty waives all challenges to the prosecution except those going to the court's jurisdiction. *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (citing *United States v. Sykes*, 697 F.2d 87, 89 (2d Cir.1983); *LaMagna v. United States*, 646 F.2d 775, 778 (2d Cir.), *cert. denied*, 454 U.S. 898 (1981)). Thus, after a judgment of conviction has been entered upon the defendant's plea of guilty, the defendant may not raise non-jurisdictional challenges either on direct appeal or by collateral attack on federal habeas. *Id.* (citations omitted). As the Second Circuit has stated on many occasions, "[i]t is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge.

-12-

*Hayle v. United States*, 815 F.2d at 881 (citation omitted); *accord, e.g.*, *United States v. Calderon*, 243 F.3d 587, 590 (2d Cir. 2001); *United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003).

In order to sustain a challenge to the trial court's jurisdiction, the defendant who has pleaded guilty must establish that the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a offense under state law. *See Hayle*, 815 F.2d at 882 ("In order to sustain a challenge to the district court's jurisdiction, the defendant who has pleaded guilty must establish that the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense.") (citing *United States v. Santelises*, 476 F.2d 787, 788 (2d Cir.1973) (holding that a *coram nobis* attack on guilty plea based on alleged failure of indictment to allege violations of federal law must be rejected "'unless [the indictment] is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted' ") (quotation and other citation omitted). "If the indictment alleges all of the statutory elements of a[n] . . . offense and the defendant's contention is that in fact certain of those elements are lacking, the challenge goes to the merits of the prosecution, not to the jurisdiction of the court to entertain the case or to punish the defendant if all of the alleged elements are proven." *Id.* (citing *LaMagna v. United States*, 646 F.2d at 778).

Furthermore, alleged errors in a state grand jury proceeding have been held to be not cognizable on federal habeas review.  In *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989), the Second Circuit considered whether claimed errors in a grand jury proceeding, including insufficiency of the evidence to support the indictment and the prosecutor's failure to present exculpatory evidence, are cognizable in a habeas corpus proceeding. The Second Circuit held

that such challenges to a state grand jury proceeding do not state a basis for federal habeas relief,

finding dispositive the Supreme Court's holding in *United States v. Mechanik*, 475 U.S. 66

(1986). In *Mechanik*, the Supreme Court rejected defendants' constitutional attack on their

federal grand jury proceeding, finding that

> the petit jury's subsequent guilty verdict means not only that there was probable
> cause to believe that the defendants were guilty as charged, but also that they are
> in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's
> verdict, then, any error in the grand jury proceeding connected with the charging
> decision was harmless beyond a reasonable doubt.

*Id.* at 70 (footnote omitted). Based on the above-quoted reasoning from *Mechanik*, the Second

Circuit held in *Lopez* that "[i]f federal grand jury rights are not cognizable on direct appeal where

rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a

fortiori* foreclosed in a collateral attack brought in federal court." *Lopez*, 865 F.2d at 32.

Courts in this Circuit have held that *Lopez*'s reasoning applies equally to a conviction

based on a plea of guilty and accordingly have held that a defendant's guilty plea cured any

possible deficiency in the grand jury proceeding. *See*, *e.g.*, *Hutchings v. Herbert*, 260 F. Supp.2d

571 (W.D.N.Y. 2003); *Alston v. Ricks*, 2003 WL 42144, at *7 (S.D.N.Y. Jan. 3, 2003) (holding

that guilty plea precluded petitioner's claim regarding prosecutorial misconduct before the grand

jury); *Ballard v. Costello*, 2001 WL 1388297, at *8 (E.D.N.Y. Nov. 2, 2001) (holding that

"[petitioner's] guilty pleas cured any possible deficiencies in the grand jury proceeding" ).  In

other words, where a habeas petitioner has entered a voluntary and knowing guilty plea while

represented by competent counsel, any non-jurisdictional defects, including defects with regard

to grand jury proceedings, are waived.  *See Jordan v. Dufrain*, No. 98 Civ. 4166(MBM), 2003

WL 1740439, at *3 (S.D.N.Y. Apr. 2, 2003) (concluding that the petitioner had "admitted his

guilt when he entered his guilty plea, and thus any errors in the grand jury proceedings were rendered harmless") (citing, *inter alia*, *Alston v. Ricks*, No. 01 Civ. 9862(GWG), 2003 WL 42144, at *7 (S .D.N.Y. Jan. 7, 2003) ("[A] guilty plea extinguishes the ability of a habeas petitioner to raise a claim regarding misconduct before a grand jury."); *Lloyd v. Walker*, 771 F. Supp. 570, 576-77 (E.D.N .Y.1991) ("Having admitted to the factual basis of the charges against him upon entering a plea of guilty, any error in the proceeding which led to his indictment is, as *Lopez v. Riley* teaches, rendered harmless, and is not a cognizable claim in a federal habeas proceeding.").

> Neither *Tollett v. Henderson*, . . . nor our earlier cases on which it relied, . . . stand for the proposition that counseled guilty pleas inevitably "waive" all antecedent constitutional violations However in *Tollett* we emphasized that waiver was not the basic ingredient of this line of cases. . . . The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

*Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) (concluding that a guilty plea did not bar the petitioner's double jeopardy claim, as "the claim is that the State may not convict petitioner no matter how validly his factual guilt is established") (emphasis in original). Sullivan's argument concerning the presentation of evidence to the grand jury, unlike the claim raised in *Menna*, does not go to the constitutional permissibility of the state's initiation of proceedings against him or otherwise represent an argument that, had it been accepted before trial, "would forever preclude the state from obtaining a valid conviction against him, regardless of how much the state might

endeavor to correct the defect," *United States v. Curcio*, 712 F.2d 1532, 1539 (2d Cir. 1983).

Therefore, his claim concerning the grand jury proceedings does not survive his knowing,

voluntary, and intelligent guilty plea on the underlying indictment. *Accord*, *e.g.*, *Smith v. Burge*,

2005 WL 78583, at *7-8 (rejecting claim asserted by habeas petitioner that the district attorney

improperly admitted false evidence at the grand jury proceedings, thereby rendering the

indictment insufficient; claim related to a mere non-jurisdictional defect and was extinguished as

a result of petitioner's voluntary guilty plea).

Since Sullivan admitted to all of the factual elements of the charge against him by

entering a plea of guilty, any error in the proceeding which led to his indictment is rendered

harmless and is not amenable to habeas review. *Lloyd v. Walker*, 771 F. Supp. at 576-77 (citing

*Lopez*, 865 F.2d at 32). Petitioner apparently raised no objection to his indictment or to the

conduct of his grand jury proceeding when he entered his guilty plea, and does not contend that

such plea was not properly entered. For the foregoing reasons, the Court recommends dismissing

Sullivan's  claim that the evidence presented in the grand jury proceeding was legally

insufficient.

**Ground Three:**          **Petitioner's appellate rights waiver was not knowing, intelligent or voluntary.**

Sullivan contends that "the plea court's inquiry was inadequate to insure that any waiver

of [his] right to appeal was truly voluntary, knowing, and intelligent." Pet'r App. Br. at 8. At the

plea colloquy on March 22, 2001, the trial court ascertained that Sullivan understood the

constitutional rights he was giving up by pleading guilty.  Thereafter, the following exchange

between the judge and Sullivan occurred:

| The Court: | I understand that as part of this plea you are giving up your right to appeal this conviction. Is that correct? |
| The Defendant: | Yes. |
| The Court: | Do you understand that means you cannot come back to this court or to any court to set aside this conviction once you accept the plea? |
| The Defendant: | Yes. |

P.6-7.[1] Sullivan thereafter entered his guilty plea to one count of third degree criminal possession of a weapon. On direct appeal, Sullivan's appellate counsel argued that and therefore the inquiry was inadequate to insure that the waiver of appellate rights was voluntary, knowing, and intelligent. Pet'r App. Br. at 8, Resp't Ex. B. The Fourth Department held that Sullivan's waiver of the right to appeal was "knowing and voluntary[.]" *People v. Sullivan*, 3 A.D.3d at 1176 (citing, *inter alia*, *People v. Kemp*, 94 N.Y.2d 831, 833 (N.Y. 1999)).

A waiver is ordinarily defined as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *accord*, *e.g.*, *United States v. Nelson*, 277 F.3d 164, 219 (2d Cir. 2002). Here, the state court informed petitioner of his right to appeal. The New York Court of Appeals has recently held that a waiver of appeal is invalid "[w]hen a trial court characterizes an appeal as one of the many rights automatically extinguished upon entry of a guilty plea." *People v. Lopez*, 6 N.Y.3d 248, 256 (N.Y.2006). In so ruling, the New York Court of Appeals emphasized in *Lopez* that "[w]hen a trial court inaccurately employs the language of forfeiture in a situation of waiver, it has mischaracterized the nature of the right a defendant was being asked to cede." *Id.* Here, however, the trial court's comment indicated that petitioner was being *asked* to waive the right to appeal as part of his guilty plea as opposed to automatically forfeiting it as a condition of pleading guilty. Thus, it

---

[1]      Citations to "P.___" refer to the transcript of the plea hearing held on March 22, 2001.

appears as though petitioner's waiver of his right to appeal was valid as a matter of state law. *See People v. Lopez*, 6 N.Y.2d at 256. Even if Sullivan were correct that the waiver did not comport with state law, that still would be an insufficient basis as habeas relief is not available to redress errors of state law, *see* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). *See Nicholas v. Smith*, No. 02 CV 6411(ARR), 2007 WL 1213417, at *10-11 (E.D.N.Y. Apr. 24, 2007) (holding that while petitioner's argument that the appeal waiver was invalid had some basis in New York law, petitioner had not demonstrated that the enforcement of the waiver denied him of any rights under the federal Constitution).

Most important, Sullivan has not demonstrated that his appellate rights waiver was invalid as a matter of federal law. The "right to appeal in a criminal case is not of constitutional magnitude." *United States v. Teeter*, 257 F.3d 14 (1st Cir. 2001) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Given that a defendant may waive constitutional rights as part of a plea agreement, *id.* (citing *Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987); *Brady v. United States*, 397 U.S. 742, 752-53 (1970)), "it follows logically that a defendant ought to be able to waive rights that are purely creatures of statute," *id.* In the context of guilty pleas at the federal level, the Second Circuit has held that a defendant's waiver of the right to appeal pursuant to a plea agreement is enforceable so long as "the record 'clearly demonstrates' that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." *United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996) (citation omitted); *accord*, *e.g.*, *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001); *see also id.* at 114 ("If the constitutionality of th[e] process [process by which the plea agreement was consummated] passes muster, the plea agreement's waiver would bar any consideration by the

-18-

appellate court of issues that fall within the scope of that waiver."); *United States v. Garcia*, 166 F.3d 519, 521 (2d Cir. 1999). The underlying rationale for courts' willingness to enforce waivers of appellate rights in the context of plea agreements is that such agreements are construed as contracts, in that they represent bargained-for exchanges; the waiver of the right to appeal is considered to be a potential bargaining chip for criminal defendants. *See United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995). In reviewing direct appeals of criminal defendants, the Second Circuit has emphasized that plea agreements are to be "strictly" construed against the government, and a criminal defendant's waiver of appellate rights is to be construed "narrowly." *Ready*, 82 F.2d at 558, 559. Here, there did appear to be a bargained-for-exchange, as Sullivan pleaded guilty to one count of criminal possession of a weapon in full satisfaction of a three-count indictment and, in return, received a promise as to his sentence from the prosecutor and the court. Sullivan faults the trial court for failing to "explain specifically that appellant had an absolute right to appeal his suppression issues, conviction, and sentence, or that he was relinquishing that absolute right in exchange for the plea bargain." However, Sullivan has pointed to no federal precedent standing for the proposition that the trial court must employ specific language when apprising a defendant pleading guilty of the individual rights abandoned. *Cf.  United States v. Ciampi*, 419 F.3d 20, 25 (1st Cir. 2005) ("Although it is true that the district court never asked Ciampi specifically or directly: 'Do you understand the provision waiving your appellate and habeas rights,' we have prescribed no 'mandatory language for such an inquiry because the circumstances will vary from case to case, from defendant to defendant, and from plea agreement to plea agreement. We caution only that the court's interrogation should be specific enough to confirm the defendant's understanding of the waiver and her acquiescence in

the relinquishment of rights that it betokens.'") (quotation omitted).  Sullivan has failed to show

that the state court's enforcement of the waiver of his appellate rights denied him of any rights

under the federal Constitution. Accordingly, the Court recommend's that Sullivan's claim

attacking the voluntariness of his waiver of appellate rights be dismissed. *See Nicholas v. Smith*,

2007 WL 1213417, at *10-11 (rejecting habeas petitioner's argument that the state court's failure

to make perfectly clear that petitioner was being *asked* to waive his right to appeal as part of his

plea bargain, rather than forfeiting it as a matter of law as part of the guilty plea; finding that it

did not "constitute[ ] the type of unreasoned distinction the Supreme Court has held to violate the

Fourteenth Amendment; further rejecting petitioner's claim that the state court erroneously

insisted that he waive his appellate rights as a condition of pleading guilty to the indictment

because petitioner has failed to point to any Supreme Court precedent that requires an appeal

waiver to be a bargained-for-exchange in order to be valid under federal law).

**Ground Four:**          **Contraband was seized from petitioner in violation of his Fourth**
                          **Amendment right to be free from unreasonable searches and seizures.**

As fourth ground for habeas relief, Sullivan contends that the evidence seized during the

stop of his vehicle–namely, the marijuana and the handgun–was in violation of his Fourth

Amendment right to be free from unreasonable searches and seizures. *See* Pet. at 3, ¶12(D) (Dkt.

#1). White alleges that the police violated his Fourth Amendment rights when they engaged in an

illegal search and seizure of the vehicle. Respondent argues that these claims are procedurally

barred because of the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 494 (1976).

In *Stone v. Powell*, the Supreme Court held that "where the state has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." 428 U.S. at 494. The Second Circuit has developed a litmus test to determine if a state prisoner was denied a full and fair opportunity to litigate Fourth Amendment claims in state court. *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  The defendant need not have actually taken advantage of the opportunity for *Stone v. Powell*'s preclusion to come into play. *See Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir. 1977), *cert. denied*, 434 U.S. 1038 (1978); *accord, Pulver v.* Cunningham, 562 F.2d 198 (2d Cir. 1977).  The Second Circuit has held that Fourth Amendment claims may only be reviewed by courts on federal habeas in two limited circumstances–if the state has provided *no* corrective procedures at all to redress the alleged Fourth Amendment violations; or if the state has provided a corrective mechanism, but the defendant was precluded from using the mechanism because of an "unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70 (citing *Gates v. Henderson*, 568 F.2d at 840). The focus of the inquiry as to whether there has been an "unconscionable breakdown" in the state's corrective process must be on "the existence and application of the corrective procedures themselves" rather than on the "outcome resulting from the application of adequate state court corrective procedures." *Capellan*, 975 F.2d at 71; *accord Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]").

Sullivan's Fourth Amendment claims may not be reviewed here because he has failed to meet the exceptions to the *Stone v. Powell* doctrine outlined by the Second Circuit in *Gates*. First, federal courts in this Circuit have approved New York's corrective procedures codified in New York Criminal Procedural Law §§ 710 *et seq.* as facially adequate to redress Fourth Amendment violations. Moreover, Sullivan took full advantage of New York's corrective procedures, litigating his Fourth Amendment claims at a two-day suppression hearing held before the trial court. *Capellan*, 975 F.2d at 70; *Gates*, 568 F.2d at 837; *Taylor v. Kuhlmann*, 36 F. Supp.2d 534, 549 (E.D.N.Y. 1999). In denying Sullivan's suppression motion, the trial court found that the police had reasonable suspicion to stop his vehicle; that in the course of appropriately requesting to see his license and registration, the police observed a baggie of suspected marijuana; that Sullivan confirmed that the baggie contained marijuana; that the pat-down after the observation resulted in the police officer confiscating a weapon; that Sullivan's written and oral statements that he did not possess a valid pistol permit were made after the *Miranda* warnings were given; and that Sullivan's admissions were voluntary and not the result of coercion, duress, or promises. *See* H.66-71. The trial court in Sullivan's case made comprehensive findings of fact supported by a full record, leaving no question that Sullivan had a "full and fair opportunity" to litigate his Fourth Amendment claims. *See Simmons v. Clemente*, 552 F.2d 65, 69 (2d Cir. 1977) (finding that state judges in deciding a Fourth Amendment claim had "made comprehensive findings of fact supported by a full record").

Second, there was no unconscionable breakdown of the process. Sullivan has only asserted that the state courts erroneously decided his motion to suppress, and he is requesting that this Court conduct a *de novo* factual review of his claims. The relief requested, however, is

expressly forbidden by the *Stone v. Powell* doctrine, as the Second Circuit has explained many times: A petitioner's mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an "unconscionable breakdown" occurred in the existing process in violation of the  petitioner's Fourth Amendment rights under the Constitution. *Capellan*, 975 F.2d at 71 ("[T]o the extent that [petitioner] claims that the Appellate Division erred in its ruling . . . , this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is *not the equivalent* of an unconscionable breakdown in the state's corrective process.") (emphasis supplied); *Gates v. Henderson*, 568 F.2d at 840 ("*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").[2] *Accord*, *e.g.*, *Watkins v. Perez*, No. 05 Civ. 477(GEL), 2007 WL 1344163, at *23 (S.D.N.Y. May 30, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "unconscionable breakdown" in the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim"); *Huntley v. Superintendent*, No. 9:00CV191, 2007 WL 319846, at *8 (N.D.N.Y. Jan. 30, 2007); *Gonzalez v. Superintendent, Sullivan Corr. Fac.*, 761 F. Supp. 973, 977 (E.D.N.Y. 1991) (rejecting habeas petitioner's claim that state court denied his request for a

---

[2]        The Second Circuit has explicitly rejected the possibility of interpreting *Stone v. Powell* to require the reviewing court to focus on the correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims, rather than on the existence and application of the corrective procedures themselves. According to the Second Circuit, to subject a habeas petitioner's previously litigated Fourth Amendment claims to further federal review would be to assume, "implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." *Capellan*, 975 F.2d at 71. *Stone v. Powell*, however, "expressly discouraged" it from making such an assumption. *Id.* (citing *Powell*, 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States.").

probable cause hearing insufficient facts asserted to warrant such a hearing was "unconscionable breakdown" in the process afforded by the state; petitioner was provided, as mandated by *Stone*, with a full and fair opportunity to litigate his fourth amendment claim in the state courts and "[t]he fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process").

Under these circumstances, the doctrine of *Stone v. Powell* precludes *de novo* review of state court fact-finding on a Fourth Amendment issue. Accordingly, the Court recommends dismissing Sullivan's Fourth Amendment claims relating to the stop of his vehicle and the seizure of the marijuana and the handgun. *Accord*, *e.g.*, *Woods v. Kuhlmann*, 677 F. Supp. 1302, 1306 (S.D.N.Y. 1988).

Not only are Sullivan's Fourth Amendment claims precluded under the *Stone v. Powell* doctrine, they were forfeited as part of his guilty plea. "By entering a guilty plea, the accused does not simply state that he did the discrete acts described in the indictment, he admits guilt of a substantive crime." *United States v. Broce*, 488 U.S. 563, 563 (1989). The plea of guilt is therefore, an "admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Thus, after entering a guilty plea, a criminal defendant may not "thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea [.]" *Tollett v. Henderson*, 411 U.S. at 267. "[I]n the absence of a court-approved reservation of issues for appeal," a guilty plea waives all non-jurisdictional defects. *Hayle v. United States*, 815 F.2d at 881; *United States v. Coffin*, 76 F.3d at 496. Therefore, a criminal defendant may not raise non-jurisdictional challenges on direct appeal or by

collateral attack. *Hayle*, 815 F.2d at 881; *LaMagna v. United States*, 646 F.2d at 778.

Since Fourth Amendment rights are non-jurisdictional, a defendant's knowing and voluntary guilty plea waives Fourth Amendment claims. *See*, *e.g* ., *United States v. Arango*, 966 F.2d 64, 66 (2d Cir. 1992) (holding that defendant's guilty plea waived his right to object to the constitutionality of the search of his van); *Tobon v. United States*, 132 F. Supp.2d 164, 168 (S.D.N.Y. 2001) (finding that petitioner who pled guilty waived Fourth Amendment claims in habeas petition). Here, Sullivan's Fourth Amendment claims were addressed in a suppression hearing prior to his plea, and any appeal of those claims was waived when he pled guilty. Sullivan never reserved the right to appeal any issue; to the contrary, his plea was negotiated on the condition that he waive his right to appeal. Moreover, there is nothing in any of his pleadings submitted to the state courts or this Court suggesting that his plea was not made voluntarily, intelligently, and knowingly. For the foregoing reasons, the Court recommends dismissing Sullivan's Fourth Amendment claims because his guilty plea forecloses his right to seek collateral relief on such claims.

## IV.    Conclusion

For the reasons set forth above, the Court recommends that the petition for a writ of habeas corpus filed by Charles Sullivan be **DENIED**. Furthermore, the Court finds that Sullivan has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that no Certificate of Appealability should issue with respect to any of Sullivan's claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: August 14, 2007
       Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Rochester, New York
        August 14, 2007.